# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **ANNALISA SUNDERLAND,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 11-1074-JWL** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

## I.    Background

Plaintiff applied for DIB on July 10, 2008, alleging disability beginning September 1, 1998. (R. 11, 102-15). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (R. 11, 53-54, 71-72). Plaintiff's request was granted, and Plaintiff appeared with counsel for a

hearing before ALJ Edmund C. Werre on August 7, 2009.  (R. 22-52).  At the hearing

testimony was taken from Plaintiff and from a vocational expert.  (R. 11, 22-52).

On October 14, 2009, ALJ Werre issued his decision.  (R. 11-21).  He found that

Plaintiff was insured for DIB only through March 31, 2002 (Plaintiff's date last insured

"DLI"), and determined that Plaintiff must show she was disabled before that date in

order to obtain benefits.  (R. 11).  He found that through her DLI, Plaintiff had the severe

impairment of fibromyalgia, but that she had not presented evidence that a 1997 wrist

surgery or restless leg syndrome had more than a minimal effect on her ability to perform

basic work activities, and he determined those impairments were not severe before the

DLI.  (R. 13-14).  At step three of the sequential evaluation process, he found that before

her DLI Plaintiff did not have an impairment or combination of impairments that met or

medically equaled the severity of a listed impairment.  Id. at 14.

The ALJ found that during the relevant time period Plaintiff had the residual

functional capacity (RFC) to perform the full range of light work, and that although she

was unable to perform any past relevant work, there were jobs that existed in significant

numbers in the economy that Plaintiff could have performed.  (R. 14-20).  Therefore, he

concluded that Plaintiff was not disabled within the meaning of the Act at any time from

September 1, 1998 through March 31, 2002, and he denied her application.  (R. 20-21).

Plaintiff believed the ALJ's decision was not supported by substantial record

evidence, submitted a Representative Brief and additional medical evidence, and

requested Appeals Council review.  (R. 6-7); see also, (R. 235, 692-745).  The Appeals

2

Council accepted the representative brief and the additional evidence, and made it a part of the administrative record.  (R. 5).  Nevertheless, the Council found the new information did not provide a basis for the changing the ALJ's decision, found no reason under Social Security Administration (SSA) rules to review the decision, and denied Plaintiff's request.  (R. 1-2).  Therefore, the ALJ's decision is the final decision of the Commissioner.  (R. 1); <u>Blea v. Barnhart</u>, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review of that decision. (Doc. 1).

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act.  <u>Weinberger v. Salfi</u>, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); <u>Wall v. Astrue</u>, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); <u>Brandtner v. Dep't of Health and Human Servs.</u>, 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)).  Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party.  It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.  <u>Lax v. Astrue</u>, 489 F.3d 1080, 1084 (10th Cir. 2007); <u>accord</u>, <u>White v. Barnhart</u>, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion.  <u>Wall</u>, 561 F.3d at

3

1052; <u>Gossett v. Bowen</u>, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither

reweigh the evidence nor substitute [its] judgment for that of the agency."  <u>Bowman v.

Astrue</u>, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting <u>Casias v. Sec'y of Health &

Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991)); <u>accord</u>, <u>Hackett v. Barnhart</u>, 395

F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports the

Commissioner's decision is not simply a quantitative exercise, for evidence is not

substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.

<u>Gossett</u>, 862 F.2d at 804-05; <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).

 An individual is under a disability only if that individual can establish that she has

a physical or mental impairment which prevents her from engaging in any substantial

gainful activity, and which is expected to result in death or to last for a continuous period

of at least twelve months.  <u>Knipe v. Heckler</u>, 755 F.2d 141, 145 (10th Cir. 1985) (quoting

identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and

1382c(a)(3)(A)); <u>accord</u>, <u>Lax</u>, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A)).  The claimant's impairments must be of such severity that she is not

only unable to perform her past relevant work, but cannot, considering her age, education,

and work experience, engage in any other substantial gainful work existing in the national

economy.  42 U.S.C. § 423(d)(2)(A).

 The Commissioner uses a five-step sequential process to evaluate disability.  20

C.F.R. § 404.1520 (2009); <u>Wilson v. Astrue</u>, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing

<u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be

4

made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining whether claimant can perform past relevant work; and whether, considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Blea, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy within Plaintiff's capability. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff's Brief presents two arguments regarding error in the ALJ's decision. First, Plaintiff argues that the ALJ failed to provide a narrative discussion explaining how

the evidence supports the RFC limitations assessed, and then she argues that the ALJ

erred in his credibility determination because he relied on an improper credibility factor

and failed to consider all of the regulatory factors.  (Pl. Br. 1, 5-13).  In making her

argument regarding RFC assessment, Plaintiff implies that the ALJ erred in his evaluation

of the opinion evidence and should have either recontacted Plaintiff's "treating doctor(s)"

or ordered a consultative evaluation in order to determine Plaintiff's capabilities during

the relevant time period.  (Pl. Br. 6-9).  She also argues that the ALJ failed to consider all

of Plaintiff's impairments when assessing RFC.  Id. at 10-11.  The Commissioner opposes

each error alleged, and argues that the ALJ applied the correct legal standard and that

substantial record evidence supports the ALJ's decision.  The court finds no error, and

orders that the decision shall be affirmed.  It will address each issue in the order raised in

Plaintiff's Brief.

## III.     Residual Functional Capacity Assessment

Plaintiff quotes the ALJ's RFC finding (that before her DLI Plaintiff could

perform the full range of light work), and points out that the ALJ did not give substantial

weight to any of the opinions regarding Plaintiff's capabilities, and did not recontact the

"treating doctor(s)" or order a consultative examination in order to obtain or clarify

evidence of Plaintiff's capabilities during the relevant period.  (Pl. Br. 6-8).  Plaintiff then

argues that the ALJ erred because he did "not cite to any medical evidence or other

evidence that supports a finding that Sunderland . . . can perform light work on a full-time

basis," and because he "never offered any rationale or explanation indicating why the

6

objective evidence or diagnoses would support the ALJ's conclusion that Sunderland could still perform light work." Id. at 9.  Plaintiff argues that this demonstrates that the ALJ did not provide a narrative discussion which explains how the evidence supports the conclusion that Plaintiff can perform light work.  Id.  In her final RFC argument, Plaintiff argues that the ALJ failed to consider her "not severe" impairments in assessing her RFC limitations.  (Pl. Br. 10-11).

In response, the Commissioner argues that the ALJ properly considered the opinions of Dr. Miller, Ms. Sorrell, and Dr. Siemsen, and was not required to recontact the physicians or obtain a consultative evaluation.  (Comm'r Br. 11-15).  He argues that despite discounting the opinion evidence, the ALJ's findings are supported by substantial record evidence and his narrative discussion adequately explains his RFC determination. Id. at 15-16.  The Commissioner argues that the ALJ properly ignored certain of Plaintiff's "not severe" impairments because a claimant's allegations of impairments are not self-proving and must be established by medical evidence during the relevant period. Id. at 16.  He argues that the "not severe" impairments which existed during the relevant period as shown by medical evidence, were properly considered by the ALJ, who decided they produced no additional limitations on Plaintiff's RFC.

To the extent Plaintiff may be arguing that the ALJ improperly weighed the opinions of Plaintiff's treating physician, Dr. Miller, and of her massage therapist, Ms. Sorrells, the court finds no error.  In her brief, Plaintiff provides a relatively detailed summary of Dr. Miller's medical opinions, and quotes Ms. Sorrells's opinion letter in its

entirety.  (Pl. Brief 6-7).  Plaintiff asserts that the ALJ provided "little weight" to Dr. Miller's opinions on the basis that they were not supported by the doctor's objective findings, that they were inconsistent, and that they did not show Plaintiff's limitations before her date last insured.  Id. at 7 (citing (R. 17-18)).  She asserts that the ALJ provided "little weight" to Ms. Sorrells's opinion on the basis that it relied upon Plaintiff's subjective complaints, it was inconsistent with Plaintiff's ability to care for her young child, and it did not show Plaintiff's limitations before her date last insured.  Id. at 8 (citing (R. 18)).  Although Plaintiff's brief implies in a general sense that the ALJ's evaluation of Dr. Miller's and Ms. Sorrells's opinions is erroneous, it does not directly assert that the evaluation is erroneous, and it does not explain how the ALJ erred or what is wrong about the ALJ's findings.

In her Reply Brief Plaintiff does state, "The ALJ failed to properly consider the opinions of Sunderland's treating physician, Dr. Miller, and Tiffani J. Sorrells, NCTM, Sunderland's massage therapist."  (Reply 3) (citations to the administrative record omitted).  However, once again she does not explain how the ALJ erred, what legal standard was omitted or incorrectly applied, or what evidence demonstrates error in the ALJ's findings.  The Commissioner argues that the ALJ properly weighed these opinions, citing record evidence tending to support the ALJ's reasons for discounting the opinions of Dr. Miller and Ms. Sorrells.  (Comm'r Br. 12-13).

The decision reveals that the ALJ summarized Dr. Miller's opinions and gave them "little weight."  (R. 16-18).  As his bases for doing so, he stated:  (1) "there is little in Dr.

Miller's treatment notes aside from the claimant's subjective complaints;" (2) "the opinions of Dr. Miller are not well supported;" (3) "there are many discrepancies between [Dr. Miller's] two opinions;" (4) "[n]ot only do the opinions of Dr. Miller lack current support from the record, the evidence does not reflect that the claimant was so limited prior to her date last insured;" and (5) "claimant has not even presented treatment notes from Dr. Miller prior to the expiration of her date last insured."  (R. 17-18).  The ALJ provided citations to record evidence in support of each basis for discounting Dr. Miller's opinions, and the court's review of that evidence supports the ALJ's bases.

In similar fashion, the ALJ explained why he accorded only "little weight" to Ms. Sorrells's opinion.  (R. 18).  He noted that:  (1) she "is not an acceptable medical source," (2) like Dr. Miller, her opinion relies on "the claimant's subjective complaints," (3) her opinion is not "consistent with the claimant's ability to care for her young child," and (4) "the opinion explicitly states that Ms. Sorrells did not begin treating the claimant until May of 2007, more than 5 years after the expiration of the claimant's date last insured." (R. 18).  Again, the ALJ provided citations to the record in support of his determination, and the court's review supports that determination.  Plaintiff has shown no error in the evaluation of Dr. Miller's and Ms. Sorrells's opinions.

Dr. Siemsen is a state agency consultant physician who affirmed an "RFC and/or assessment of 9-11-08."  (R. 649) (extra "and" omitted).  The ALJ stated that he was unable to locate the assessment identified in Dr. Siemsen's report, and that as a consequence he was unable to review Dr. Siemsen's opinion and "the weight given to this

opinion cannot be assessed." (R. 19).  Plaintiff does not allege error in the ALJ's evaluation of Dr. Siemsen's report, but the significance of her argument is that Dr. Siemsen's report does not support the ALJ's RFC assessment, and since the ALJ had no opinion evidence supporting his RFC assessment he should have recontacted the treating physician or ordered a consultative examination.

Relying on Fleetwood v. Barnhart, 211 Fed. App'x. 736, 740 (10th Cir. 2007), Plaintiff asserts that an ALJ cannot make an RFC assessment without sufficient evidence to support his findings.  (Pl. Br. 8).  She argues that after discounting the opinions of Dr. Miller, Ms. Sorrells, and Dr. Siemsen, the ALJ had insufficient evidence to support his RFC assessment, and should have recontacted "the treating doctor(s)" or ordered a consultative examination in order to obtain the necessary evidence.  Id.  The Commissioner asserts that an ALJ is not required to seek additional evidence unless the evidence available is insufficient to make the disability determination.  (Comm'r Br. 14). He argues that even after discounting the opinion evidence at issue, the record evidence was sufficient for the ALJ to make his decision, and he did so based upon Plaintiff's description of her limitations, the ALJ's credibility determination, and the medical evidence.  Id.  Finally, he argues that recontacting Dr. Miller and/or Ms. Sorrells or ordering a consultative examination would be futile because Ms. Sorrells did not treat Plaintiff during the relevant period, Dr. Miller specifically stated he was unaware of Plaintiff's condition before her date last insured, and because a consultative examination

10

either now or at the time of the proceedings before the Commissioner could not provide evidence regarding Plaintiff's condition before her date last insured. Id. at 15.

The court agrees with the Commissioner's argument, with a single caveat. Even if the evidence is insufficient to determine disability after discounting the opinions at issue, recontacting Dr. Miller or Ms. Sorrells or ordering a consultative examination would be futile in the circumstances. Ms. Sorrells stated that she began treating Plaintiff on May 22, 2007. (R. 632). Therefore, she has no personal knowledge of Plaintiff's condition before Plaintiff's date last insured and any opinion she expressed in that regard would be mere unsupported speculation.

As the Commissioner points out, in Dr. Miller's second Medical Source Statement, dated August 3, 2009, Dr. Miller acknowledged that he did not know if Plaintiff's impairments existed before March 31, 2002. (Comm'r Br. 15) (citing (R. 686)). The evidence to which the Commissioner cited is the last page of Dr. Miller's second Medical Source Statement. Immediately above Dr. Miller's signature, the form asks, "Did impairments exist prior to March 31, 2002?" and there is a place to check "yes," or "no." (R. 686). Neither answer is checked, but immediately to the right side of the answers, the word "Unknown" has been handwritten and underlined. Id. Strengthening the inference to be drawn from the Doctor's statement that he does not know if Plaintiff's impairments existed before March 31, 2002 is the ALJ's statement that the record does not contain treatment notes from Dr. Miller prior to plaintiff's date last insured. (R. 18). The earliest recorded date on which Dr. Miller treated Plaintiff was October 7, 2002, six months after

11

her date last insured.  (R. 688).  When appealing the ALJ's decision to the Appeals Council, Plaintiff submitted additional medical treatment records dated from April 5, 1979 through April 8, 1999, but none of those records refers to treatment by Dr. Miller. (R. 696-99).  There is simply no basis to believe that recontacting Dr. Miller or Ms. Sorrells would provide any additional information regarding the severity of Plaintiff's condition before her date last insured.

As the Commissioner points out, ordering a consultative examination at this point in time would not be helpful to evaluate Plaintiff's condition before her date last insured. Her date last insured is now more than ten years past.  Plaintiff gives no explanation how an examination at this late date (or even in October 2009 before the ALJ issued his decision) would provide information useful to a determination whether Plaintiff was disabled before March 31, 2002.

In her Reply Brief Plaintiff argues for the first time that Social Security Ruling (SSR) 83-20 requires using the services of a medical advisor when the onset date of disability must be inferred, and that the Commissioner erroneously failed to call upon a medical advisor in this case.  The court need not address an issue raised for the first time in a reply brief.  Stump v. Gates, 211 F.3d 527, 533 (10th Cir. 2000).  It will not do so here.  Moreover, Plaintiff has not established the condition upon which her argument depends--that the onset date of disability must be inferred.  Even if the court were to assume that Plaintiff is now disabled (a question which is not before this court and which was not before the Commissioner) she has not established that an onset date must be

inferred in this case.  It is for the ALJ to decide in the first instance whether an onset date

may reasonably be ascertained based on record evidence, whether it is necessary to secure

more evidence, or whether it is necessary to call on the services of a medical advisor to

establish a medical basis to infer an onset date.  Harshfield v. Astrue, Civ. A. No. 10-

2398-JWL, 2011 WL 1594916 at *3 (D. Kan. April 27, 2011) (citing SSR 83-20, 1983-

1991 West's Soc. Sec. Reporting Serv., 49, 49-52 (1992)).  Here, the ALJ determined,

based upon record evidence, that Plaintiff has not presented evidence of disability before

March 31, 2002 and Plaintiff has not shown error in that determination.  On this record,

there is no reason to infer an onset date thereafter.

To the extent Plaintiff argues that the ALJ did not explain the rationale behind his

finding that Plaintiff can perform light work, she is incorrect.  As discussed above, the

ALJ properly determined that the opinions of Dr. Miller and Ms. Sorrells do not relate to

Plaintiff's condition before her date last insured.  Further, although the ALJ determined

he could not assess weight to Dr. Siemsen's opinion, he recognized that the initial denial

of benefits was based, at least in part, on Dr. Siemsen's opinion.  (R. 19).  The ALJ then

stated his rationale for the RFC he assessed based on his review of the record evidence

including Plaintiff's allegations and testimony and the forms she completed, medical

evidence, and other relevant evidence.  Id.

> The minimal objective evidence does not indicate that the claimant would
> be unable to stand or walk 6 hours ou[t] of an 8 hour workday or sit 6 hours
> out of an 8 hour workday.  Because the record does reflect that the claimant
> has fibromyalgia, the undersigned finds that a limitation to lifting or
> carrying up to 20 pounds occasionally or 10 pounds frequently is

13

appropriate.  Therefore, the undersigned finds that the claimant is capable
of performing work activity consistent with the residual functional capacity
determined herein.

(R. 19).  Plaintiff argues that the ALJ did not cite evidence demonstrating that she can

perform light work on a full-time basis despite her severe impairments, and that the ALJ

"never offered any rationale or explanation" why the objective evidence or diagnoses

would support a finding that Plaintiff can perform light work.  (Pl. Br. 9).

Plaintiff's argument turns the burden of proof of disability in a Social Security

case on its head.  Between steps three and four of the sequential evaluation process, it is

Plaintiff's burden to prove limitations in her RFC.  Hawkins v. Chater, 113 F.3d 1162,

1164 (10th Cir. 1997) ("It is beyond dispute that the burden to prove disability in a social

security case is on the claimant.").  It is not the Commissioner's burden to prove what

Plaintiff's abilities are.  To be sure, the ALJ is "responsible in every case 'to ensure that

an adequate record is developed during the disability hearing consistent with the issues

raised.' "  Hawkins, 113 F.3d at 1164 (quoting Henrie v. United States Dep't of Health &

Human Servs., 13 F.3d 359, 360-61 (10th Cir. 1993)); 20 C.F.R. § 404.944 (requiring the

ALJ to "look[ ] fully into the issues").  Generally, this means that the "ALJ has the duty

to ... obtain [ ] pertinent, available medical records which come to his attention during the

course of the hearing."  Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996).  As

discussed above, the ALJ had no duty in this case to recontact medical care providers or

to order a consultative examination.  Plaintiff does not suggest that there is any evidence

14

regarding her condition on or before March 31, 2002 which is not in the record, or which should have been secured by the ALJ.

Here, the ALJ found that Plaintiff's allegations of limitations are not credible[1] and that Plaintiff provided no probative medical evidence that before her date last insured she could not stand/walk or sit six hours in a workday.  He then concluded that because the evidence showed that Plaintiff was diagnosed with fibromyalgia before her date last insured, it was appropriate to find that she was limited to lifting or carrying up to 20 pounds occasionally or 10 pounds frequently.  This is a reasonable conclusion based upon the record evidence.  Plaintiff does not point to evidence showing that her limitations were greater than the ALJ assessed or that the limitations assessed by the ALJ were unreasonable, but she argues that the ALJ did not point out specific evidence showing that her limitations were precisely as assessed.  The burden of demonstrating the severity of limitations resulting from impairments is on Plaintiff, not on the Commissioner. Plaintiff has not met her burden.  To the extent Plaintiff argues that she produced testamentary evidence that she had greater limitations than assessed, the court notes that the burden on Plaintiff is the burden of proof, not merely the burden of production.

In her final RFC argument, Plaintiff claims the ALJ failed to consider and discuss the other impairments Plaintiff alleged such as "brain fog," headaches, difficulty sleeping, digestive issues, pain and "shakiness" in her right wrist, pain in her feet,

---

[1]The ALJ's credibility determination is discussed hereinafter.

Temporomandibular Joint Disorder, and mental limitations.  (Pl. Br. 10-11).  The ALJ specifically discussed Plaintiff's wrist and her mental impairments.  The ALJ gave "considerable weight" to Dr. Cohen's opinion that there was insufficient evidence to establish a medically determinable psychiatric impairment prior to the date last insured-- that the evidence contains brief references to depressive symptoms, but no evidence of psychiatric evaluation or ongoing depression.  (R. 18-19) (citing Exs. 11F, 16F (R. 618-31, 650)).  Plaintiff does not argue that this was error.  The ALJ also addressed Plaintiff's complaints regarding her wrist, and noted that Plaintiff had not presented evidence that it more than minimally affected her ability to perform basic work activities.  (R. 13-14).

As the Commissioner points out, Plaintiff's complaints regarding her other impairments are not self-proving.  (Comm'r Br. 16).  Moreover, all of the impairments which Plaintiff asserts were not considered or discussed are based on Plaintiff's hearing testimony.  (Pl. Br. 10-11) ("Sunderland testified at the hearing . . .") (citing (R. 35-42)).  Although Plaintiff's argument includes citation to medical records of the Mayo Medical Foundation and of Wesley Rehabilitation Hospital, she does not explain in her brief how those records demonstrate that the impairments at issue produced limitations greater than those assessed by the ALJ.  Moreover, the portions of those medical records relating to the impairments at issue relate only to symptoms Plaintiff reported to medical care providers and do not establish that the limitations asserted were adopted or confirmed by the providers.  Finally, the ALJ found that Plaintiff's allegations of symptoms were not credible, and as discussed hereinafter, that finding is not erroneous.

IV.     **Credibility Determination**

Plaintiff correctly cites <u>Luna v. Bowen</u>, 834 F.2d 161 (10th Cir. 1987) for the

standard to be applied in determining the credibility of Plaintiff's allegation of symptoms

resulting from Plaintiff's impairments.  (Pl. Br. 11).  As she asserts, an ALJ or the court:

> must consider (1) whether Claimant established a pain-producing
> impairment by objective medical evidence; (2) if so, whether there is a
> "loose nexus" between the proven impairment and the Claimant's
> subjective allegations of pain; and (3) if so, whether, considering all the
> evidence, both objective and subjective, Claimant's pain is in fact disabling.

<u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with

pain).  She also correctly notes that credibility findings must be supported by substantial

record evidence, while the use of mere boilerplate language is insufficient.  (Pl. Br. 11-

12) (citing <u>Hardman v. Barnhart</u>, 362 F.3d 676 (10th Cir. 2004); <u>Buck v. Barnhart</u>, 238 F.

Supp. 2d 1255 (D. Kan. 2002)) (without pinpoint citation in either instance).

Plaintiff notes that the ALJ found fibromyalgia is a severe impairment in her case.

(Pl. Br. 12).  She notes that "symptoms can sometimes suggest a greater severity of

impairment than is demonstrated by objective and medical findings alone," and that the

"symptoms of fibromyalgia are entirely subjective, and there are no laboratory tests to

identify its presence or severity."  <u>Id.</u> (citing, primarily, <u>Gilbert v. Astrue</u>, 231 Fed. App'x

778, 783-84 (10th Cir. 2007)).  She notes that courts have recognized that fibromyalgia

pain can be disabling.  <u>Id.</u> at 13 (citing primarily, <u>Priest v. Barnhart</u>, 302 F. Supp. 2d

1205, 1213 (D. Kan. 2004)).

With these legal principles in mind, Plaintiff points to the ALJ's findings that Dr. Miller's opinion lacks support, and that "the degree of limitation alleged by the claimant is not well supported by the objective medical evidence, particularly evidence prior to the expiration of her date last insured."  Id. at 12 (quoting (R. 15)).  Plaintiff concludes that, "the lack of objective test findings noted by the ALJ is not determinative of the severity of a claimant's fibromyalgia."  Id. at 13 (citing Gilbert, 231 Fed. App'x at 784).

The Commissioner argues that substantial record evidence supports the ALJ's credibility determination.  (Comm'r Br. 8-11).  He points out that an ALJ need not engage in a factor-by-factor credibility analysis and argues that because the ALJ stated his reasons for discounting Plaintiff's testimony and because those reasons are closely and affirmatively linked to substantial record evidence, the credibility finding should be affirmed.  Id. at 9.  He argues that the ALJ properly considered that there was little evidence to support the limitations alleged, and he points to record evidence, including Plaintiff's daily activities, tending to support the ALJ's credibility determination.  Id. at 9-11.  In her Reply Brief, Plaintiff notes that the sporadic performance of household tasks or work does not establish that she is able to perform substantial gainful activity, and that "One does not need to be utterly and totally incapacitated in order to be disabled."  (Reply 5) (citing Thompson, 987 F.2d at 1490; Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)).  She argues that the credibility determination is not supported by substantial evidence, and should be overturned.  Id.

Plaintiff is correct that fibromyalgia pain can be disabling, and that there are no laboratory tests to identify the presence or severity of fibromyalgia. She is also correct that the lack of objective test findings is not determinative of the severity of a claimant's fibromyalgia. However, the ALJ did not rely merely on the lack of objective findings to find that Plaintiff's allegations are not credible. Rather, the court identifies nine reasons given by the ALJ to find Plaintiff's allegations of symptoms not credible. (1) The degree of limitation alleged "is not well supported by the objective medical evidence, particularly evidence prior to the expiration of her date last insured. (R. 15) (emphasis added). (2) Her doctors have recommended she increase her activity level. (3) Much of the evidence Plaintiff submitted is dated after her date last insured. (4) There is little evidence to support functional limitations beyond Plaintiff's subjective complaints. (5) The degree of limitations alleged is inconsistent with Plaintiff's activities and demonstrated abilities. (R. 15). (6) Plaintiff asked her treatment provider for a letter because she was interested in adopting a child, and in that letter the doctor indicated she was getting along fairly well. (R. 15-16). (7) Plaintiff has enrolled in school, attended church, and continued to play the piano after her alleged onset date. (8) Plaintiff's alleged difficulty using her right, dominant wrist is inconsistent with her exceptionally clear and precise handwriting, and the completeness of her answers on forms provided in the case. And, (9) Plaintiff's work history as demonstrated by quitting work to get married, expressing a plan not to return to work, and only two attempts to obtain work in ten years is inconsistent with her allegations of disability. Id. 16.

19

As the Commissioner points out, substantial record evidence supports the reasons given by the ALJ to discount Plaintiff's credibility.  While it is true that one need not be totally incapacitated to be disabled, and that sporadic performance of household tasks or work does not establish capability to engage in gainful activity, when the court considers all of the credibility factors as a whole, as it must, there is no basis to find error in the ALJ's credibility determination.  Bakalarski v. Apfel, No. 97-1107, 1997 WL 748653, *3 (10th Cir. Dec. 3, 1997) ("a credibility assessment requires consideration of all the factors 'in combination'") (quoting Huston v. Bowen, 838 F.2d 1125, 1132 n.7 (10th Cir. 1988)).

Plaintiff has shown no error in the Commissioner's decision below.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 1st day of May 2012, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**